UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN COOK, as Chairman of the Board of Trustees of the International Brotherhood of Electrical Workers Local Union 1141 Pension Trust Fund and Supplemental Pension and 401(K) Trust Fund,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. TECHNOLOGIES, INC. et al,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-23-855-G<br>)<br>)<br>)<br>)  |

## ORDER

Now before the Court is the Motion for Default Judgment (Doc. No. 7) filed by Plaintiff Kevin Cook, as Chairman of the Board of Trustees of the International Brotherhood of Electrical Workers Local Union 1141 Pension Trust Fund and Supplemental Pension and 401(K) Trust Fund (the "Funds"), seeking entry of a default judgment against Defendant U.S. Technologies, Inc. Although the Motion certifies that it was served upon Defendant via U.S. Mail, no response was filed. On August 1, 2024, the Court conducted a hearing upon the Motion pursuant to Federal Rule of Civil Procedure 55(b)(2). No representative for Defendant appeared at the hearing. *See* Doc. No. 16.

    I.    *Background*

Plaintiff initiated this action against two defendants on September 26, 2023, seeking relief in connection with the alleged violation of the parties' collective bargaining agreement pursuant to the Employment Retirement Income Security Act ("ERISA"), 29

U.S.C. §§ 1001 et seq., and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See* Am. Compl. (Doc. No. 3). On June 10, 2024, after Plaintiff showed that Defendant had failed to answer or otherwise defend itself in this lawsuit, the Clerk entered Defendant's default pursuant to Federal Rule of Civil Procedure 55(a). *See* Clerk's Entry of Default (Doc. No. 11).[1]

Plaintiff now seeks entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b). *See* Pl.'s Mot. Default J. at 1-3; Zickefoose Aff. (Doc. No. 7-1); Pl.'s Exs. 1-5 (submitted to the Court at the Aug. 1, 2024 hearing); Pl.'s Suppl. Exs. & Proposed Default J. (submitted to the Court via email from Plaintiff's counsel on Aug. 12, 2024).

## II. Discussion

### A. Procedural Requirements

The record reflects that Defendant has failed to answer or plead, that default was entered by the Clerk, and that Plaintiff's Motion complies with Local Civil Rule 55.1. Accordingly, Plaintiff has satisfied the procedural requirements for entry of a default judgment. *See* Fed. R. Civ. P. 55(b); LCvR 55.1; *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1130-D, 2018 WL 3213622, at *1 (W.D. Okla. June 29, 2018).

### B. Plaintiff's Allegations and Defendant's Liability

The entry of a default judgment "is committed to the sound discretion of the district court." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). "Default judgments are generally disfavored in light of the policy that cases should be tried upon their merits

---

[1] Plaintiff has not sought entry of default or a default judgment against Defendant Eric N. Johns, who likewise has not appeared in this action.

whenever reasonably possible. Nonetheless, default judgment is viewed as a reasonable remedy when the adversary process has been halted because of an essentially unresponsive party." *Tabb*, 2018 WL 3213622, at *1 (citing *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991)).

Because a default has been entered, Plaintiff is "relieved . . . from having to prove the complaint's factual allegations." *Tripodi*, 810 F.3d at 765; *see also United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (internal quotation marks omitted)). Even after default, however, "it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment since a party in default does not admit conclusions of law." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016) (internal quotation marks omitted).

According to the Amended Complaint, the Funds were established pursuant to one or more collective bargaining agreements and a declaration of trust (collectively, "the CBA") "entered into between International Brotherhood of Electrical Workers Local Union 1141 ('IBEW 1141'), the Oklahoma Chapter of the National Electrical Contractors Association ('NECA'), and certain employers," such as Defendant, "who have signed a Letter of Assent to the [CBA]." Am. Compl. ¶ 9. The Funds are administered in accordance with and pursuant to ERISA and the terms of the CBA, among other governing authorities. *Id.* ¶ 11.

The CBA has been in effect at all times relevant to this action. *Id.* ¶ 15. "The CBA

3

provided among its provisions that U.S. Technologies would make timely payment of contributions and designated fringe benefits to the Funds on behalf of employees of U.S. Technologies within the bargaining unit of IBEW 1141." *Id.* ¶ 15; *see* Pl.'s Ex. 5, CBA §§ 3.05(f)(3), 10.02, 10.05. "Despite the passage of dates on which Defendant U.S. Technologies was required to pay contributions and designated fringe benefits, and despite the Funds' demands, U.S. Technologies has failed, neglected, and refused to pay amounts due the Funds . . . for the period from December, 2022 to October, 2023, which is not inclusive of lost earnings on those funds." Am. Compl. ¶ 16.

### 1. Count One

In Count One, Plaintiff claims that Defendant's failure, neglecting, and refusal to make the required fringe-benefit contribution payments to the Funds for the period from December 2022 to October 2023 constitutes a breach of the CBA and violates section 515 of ERISA, 29 U.S.C. § 1145. *See* Am. Compl. ¶¶ 24-28. Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.[2]

Accepting as true the well-pleaded allegations of the Amended Complaint, the

---

[2] ERISA's civil enforcement provision allows a plan participant or beneficiary to bring a civil action to recover benefits due, enforce rights, or clarify rights to future benefits under the plan. *See* 29 U.S.C. § 1132(a)(1)(B); *see also In re Luna*, 406 F.3d 1192, 1203 (10th Cir. 2005) ("ERISA § 515 . . . may be enforced by an action brought in the district court." (internal quotation marks omitted)).

4

undisputed record evidence, and the sworn hearing testimony of Leslie Hutchinson, the owner of Capstone Retirement Services LLC (the third-party administrator of the Funds), the Court finds that they establish Defendant's liability under section 515 of ERISA for failure to comply with the contribution obligations of the CBA from December 2022 to October 2023. *See* Am. Compl. ¶¶ 4-9, 15-18, 24-28; 29 U.S.C. § 1145; CBA §§ 3.05(f)(3), 10.02; *see also Am. Stores Co. v. C.I.R.*, 170 F.3d 1267, 1271 (10th Cir. 1999) ("Employers who join multiemployer plans are statutorily obligated to make the payments required by the corresponding collective bargaining agreements. *See* 29 U.S.C. § 1145."); *Plumbers & Pipefitter Nat'l Pension Fund v. CYLX Corp.*, No. 19-cv-113, 2021 WL 6053686, at *3 (N.D. Okla. Apr. 19, 2021) (discussing required showing for section 515 liability).

  2. *Count Two*

In Count Two, Plaintiff claims that Defendant's "refusal and failure to make timely contributions to the Funds under the CBA is a breach of the CBA and a violation of § 301 of the LMRA, 29 U.S.C. § 185." Am. Compl. ¶ 30; *accord* Pl.'s Proposed Default J. at 3.

Section 301 of the LMRA addresses "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000) (internal quotation marks omitted). The statute "generally confers jurisdiction on federal district courts in '[s]uits for violations of contracts between an employer and a [union].'" *Teamsters Loc. 886 v. Sysco Okla., LLC*, No. CIV-20-162-R, 2020 WL 1663421, at *3 (W.D. Okla. Apr. 3, 2020) (alterations in original) (quoting 29 U.S.C. § 185(a)). This provision also creates substantive rights, "permitting enforcement in federal courts of

5

contracts made by labor organizations." *Smith v. United Mine Workers of Am.*, 493 F.2d 1241, 1243 (10th Cir. 1974); *see Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957) ("[T]he substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.").

Again accepting as true the uncontroverted pleading, evidence, and testimony regarding Defendant's unpaid and delinquent contributions, the Court finds that they establish Defendant's liability pursuant to section 301 of the LMRA for breach of its obligations under the CBA. *See* Am. Compl. ¶¶ 15-16, 29-31; CBA § 10.02; *see also Bd. of Trs., Colo. Sheet Metal Workers' Local 9 Fam. Health Plan v. J & C Stainless Fabricating Co.*, No. 07-cv-1970, 2009 WL 306731, at *2 (D. Colo. Feb. 6, 2009) ("The defendant's failure to remit the required contributions . . . is a breach of its obligations under the CBAs . . . and is a violation of Section 515 of ERISA . . . and Section 301(a) of the LMRA." (citations omitted)); *Int'l Union, UAW v. Cardwell Mfg. Co.*, 416 F. Supp. 1267, 1282 (D. Kan. 1976) ("[S]aid $254,098.93 is the amount which Cardwell has failed to pay under its pension plan obligation and such failure was a violation of contract within the meaning of Section 301.").

### C. Damages

As to Plaintiff's requested damages award, ERISA provides in relevant part:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions, [and]
> (C) an amount equal to the greater of—

> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A) . . . .

29 U.S.C. § 1132(g)(2). Plaintiff relies on several of these categories in seeking its default judgment. *See* Am. Compl. ¶¶ 17-18, 28, 31; Pl.'s Proposed Default J. at 3-5.[3]

### 1. *Unpaid Contributions*

Plaintiff's primary damages request rests on its entitlement to an award of "the unpaid contributions." 29 U.S.C. § 1132(g)(2)(A); *see Plumbers & Pipefitter*, 2021 WL 6053686, at *3, *5. Plaintiff has presented undisputed evidence, corroborated by Ms. Hutchinson's testimony, that Defendant owes $28,373.39 in unpaid, now-delinquent contributions to the Funds accruing from December 2022 to February 2024. *See* Am. Compl. ¶¶ 17, 27-28, 31; Pl.'s Proposed Default J. at 4; Pl.'s Ex. 1, at 1, 3. Accordingly, this amount shall be awarded to Plaintiff.

### 2. *Lost Earnings upon the Unpaid and Delinquent Contributions*

Citing 29 U.S.C. § 1132(g)(2)(B), Plaintiff additionally seeks an award of $2363.64, "representing calculable lost earnings on the unpaid and delinquent contributions through August, 2024." Pl.'s Proposed Default J. at 3, 4; *see* Am. Compl. ¶¶ 28, 31. Section 1132(g)(2)(B) does not authorize the Court to award "lost earnings," however. Nor has the Court's own research located authority to support an award of lost earnings under these

---

[3] Plaintiff clarified at the hearing that it is not seeking any separate damages award based upon Defendant's liability under the LMRA.

7

facts on an action to recover unpaid/delinquent plan contributions from an employer.[4] Plaintiff therefore has not shown an entitlement to this portion of the requested award.

### 3. Prejudgment Interest on the Unpaid Contributions

Although 29 U.S.C. § 1132(g)(2)(B) requires the Court to award prejudgment interest, Plaintiff did not request such interest or provide the Court with the requisite information from which to calculate such interest. The Court will direct Plaintiff to supplement its Motion in this regard. *See generally Boilermaker-Blacksmith Nat'l Pension Fund v. All. Constructors, Inc.*, No. 09-2289, 2010 WL 11627420, at *4 (D. Kan. Aug. 18, 2010).

### 4. Liquidated Damages

Plaintiff next seeks liquidated damages pursuant to § 1132(g)(2): "[T]he court shall award the plan . . . an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of [the unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C).[5]

---

[4] An award of lost earnings may be contemplated by the parties' agreements, but Plaintiff points to no such contract provision here. *See, e.g.*, *Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Tri-C Mech., Inc.*, No. 22-CV-1590, 2024 WL 4290823, at *4, *12 (E.D.N.Y. Sept. 10, 2024). And while "ERISA obligates a plan fiduciary in breach of his or her fiduciary duty to make good to such plan any losses to the plan resulting from each such breach," Plaintiff's Count Three, which alleges a breach of fiduciary duty, is raised only against Defendant Johns. *Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-CV-1665, 2007 WL 3124612, at *12 (E.D.N.Y. Oct. 23, 2007) (internal quotation marks omitted); *see* Am. Compl. ¶¶ 32-37.

[5] As noted, the Court is unable on the current record to calculate the "interest on the unpaid contributions" but assumes—consistently with Plaintiff's position—that the interest is less than the amount of liquidated damages provided for by the CBA. 29 U.S.C. § 1132(g)(2)(C)(i).

The CBA in this case provides in relevant part:

> **Section 10.02** <u>*LOCAL UNION 1141 PENSION PLAN*</u>. . . . . [T]he Employer agrees to forward monthly to the Pension Board of Trustees, or their designated agent, the amount set forth in [section 3.05(f)(3)] of this Agreement for each employee employed under the terms of this Agreement . . . .
>
> In the event funds are received later than the 15th of the month following the month reported on, a penalty of ten percent (10%) or $20.00, whichever sum is greater, will be assessed.

CBA § 10.02.[6]

In light of the express language of the CBA, Plaintiff has sufficiently shown entitlement to an award of "liquidated damages provided for under the plan" at the rate of 10% of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

At the hearing, Plaintiff requested that it be awarded $3070.70 in liquidated damages through August 24, 2024. Plaintiff calculated this figure as 10% of $30,737.03, which is the sum of the amount requested for unpaid contributions ($28,373.39) and the amount requested for lost earnings ($2363.64). *See* Pl.'s Ex. 1, at 1. As explained above, however, Plaintiff has not shown an entitlement to lost earnings.[7] The Court therefore finds that liquidated damages in the amount of $2837.34—10% of the unpaid contributions only—should instead be awarded, pursuant to section 10.02 of the CBA and 29 U.S.C. § 1132(g)(2)(C)(ii).

---

[6] Section 3.05(f)(3) prescribes that Defendant shall pay forward 12.5% "of the productive payroll for the Local Union Supplemental Pension Trust Fund . . . pursuant to Sections 10.02 and 10.05." CBA § 3.05(f)(3).

[7] Even if Plaintiff were so entitled, the CBA's liquidated-damages provision does not extend by its terms to any such lost earnings.

### D. Attorney's Fees and Costs

Plaintiff is additionally entitled to "reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Plaintiff has submitted a request for $18,420.37 for costs and for the fees incurred in this action by attorneys from two local law firms. The fee portion of this amount represents time spent by counsel on behalf of both the Funds and Capstone attempting to resolve the relevant delinquency issues and ultimately pursuing this litigation and default proceedings. *See* Pl.'s Proposed Default J. at 5; Pl.'s Suppl. Exs. 2, 3.

To determine a reasonable fee award under § 1132(g)(2), the Court may conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1245 (D. Colo. 2015); *Trs. of Int'l Union of Painters v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 445 (D.N.J. 2024). "A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate." *Reg'l Dist. Council*, 82 F. Supp. 3d at 1245 (citing *Hensley*, 461 U.S. at 433). "To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment." *Id.* "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* at 1245-46 (internal quotation marks omitted). "Once the Court determines the lodestar, it may adjust the lodestar upward or downward to account for the particularities of the work performed." *Id.* at 1245 (internal quotation marks omitted).

Plaintiff's timekeeping records reflect that from August 2023 through August 2024, two attorneys at Baum Glass Jayne Carwile & Peters PLLC worked a total of 51.2 hours on this matter. After writing off 2.0 hours as "[n]o charge," this firm invoiced $9766.50 in fees, as well as $1301.87 in costs. Pl.'s Suppl. Ex. 3. From January 2024 through June 2024, three attorneys at McAfee & Taft worked a total of 22.3 hours, billing $7276.00, as well as $76.00 in costs. *See* Pl.'s Suppl. Ex. 2. Having reviewed the uncontroverted billing records as to the type of work performed, and accepting Ms. Hutchinson's testimony as to the necessity for that work, the Court finds that the relevant rates (primarily in the range of $200 to $375 per hour) and hours expended support Plaintiff's requested fee award. Further, the Court finds that the costs sought of $1377.87, $402.00 of which was the filing fee in this matter, are likewise reasonable and should be awarded.

### E. Third-Party Administration Fees

At the hearing, Plaintiff requested damages in the amount of $2775.00, which is the amount paid by the Funds to Capstone for Capstone's "additional administrative services related to pursuit of the unpaid and delinquent contributions." Pl.'s Proposed Default J. at 5. The billing summary and Ms. Hutchinson's testimony reflect that this sum was paid to Capstone, over and above that company's regular monthly servicing fee, to compensate Capstone for assisting attorneys and otherwise endeavoring to resolve the Funds' dispute with Defendant regarding the unpaid contributions. *See* Pl.'s Ex. 4.

Section 1132(g)(2)(E) authorizes the Court to award Plaintiff "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). While the Court agrees that this item of damages appears appropriate as a general matter, the Court

11

is constrained here by Federal Rule of Civil Procedure 54(c), which prescribes: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This rule "effectively limits a plaintiff's award on default to the amount of relief requested in the complaint." *Operating Eng'rs Local No. 101 Pension Fund v. D.F. Freeman Contractors*, No. 08-2219, 2008 WL 4394710, at *1 (D. Kan. Sept. 24, 2008).

Plaintiff did not seek the additional Capstone charges incurred by the Funds in the Amended Complaint. Nor did Plaintiff include this category of damages in its Motion for Default Judgment, which would have provided Defendant with notice of the request. The Court therefore denies this aspect of Plaintiff's Motion. *See* Fed. R. Civ. P. 54(c); *Operating Eng'rs*, 2008 WL 4394710, at *1-2.

### F. Declaratory Judgment and Specific Performance

Finally, Plaintiff requests that the Court enter the following declaratory judgment:

a. That Defendant U.S. Technologies, Inc.'s obligations under the CBA include the issuance of timely payment of contributions and designated fringe benefits to the Funds on behalf of employees of U.S. Technologies within the bargaining unit of IBEW 1141;

b. That Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185, require Defendant U.S. Technologies, Inc. to pay fringe benefit contributions to the Funds in accordance with the terms and conditions of the CBA between it and IBEW 1141; and

c. That, until such time as all unpaid and delinquent contributions are paid in full, the Funds will continue to suffer the loss of earnings and interest thereon, in an amount that cannot be calculated until such time as the unpaid and delinquent contributions are paid in full[.]

Pl.'s Proposed Default J. at 5. Plaintiff also asks that the Court order Defendant

> to perform its contractual obligations to accurately, timely, and fully remit all present and future contributions which become due and owing to the Funds, until such time as Defendant U.S. Technologies, Inc. is no longer an assenting party to the CBA.

*Id.* at 5-6.

Plaintiff did not request these items of equitable relief in its pleading.[8] The Amended Complaint does, however, seek "such other and further relief as [the Court] may deem just and proper." Am. Compl. at 9. Plaintiff did expressly seek this relief in its Motion for Default Judgment, which was duly served upon Defendants. *See* Pl.'s Mot. Default J. at 2-3.

Under the circumstances of this case, any "due process concerns" were "addressed by serving" the Motion upon Defendant, which reflected Plaintiff's "amended request for relief." *Stafford v. Jankowski*, 338 F. Supp. 2d 1225, 1228 (D. Kan. 2004). Plaintiff's Motion "served as notice to [Defendant] and allowed it to reevaluate its decision to risk default judgment." *Id.* The Court finds that entry of the cited declaratory judgment and direction of the cited specific performance are therefore not precluded by Federal Rule of Civil Procedure 54(c) and, further, constitute "appropriate" "other . . . equitable relief" available to Plaintiff. 29 U.S.C. § 1132(g)(2)(E).

---

[8] The Court disagrees with and rejects Plaintiff's representation that "[t]he First Amended Complaint . . . requests other appropriate equitable relief to enforce the provisions of the plain, including enforcement and collection of additional ongoing and future funding obligations." Pl.'s Mot. Default. J. at 2.

13

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment (Doc. No. 7) is GRANTED IN PART and DENIED IN PART.

IT IS ORDERED that within fourteen (14) days of the date of this Order, Plaintiff file a supplemental brief regarding the proper interest rate and the calculation of the award of prejudgment interest required by 29 U.S.C. § 1132(g)(2)(B).

A separate Default Judgment on Counts One and Two as to Defendant U.S. Technologies, Inc. shall be entered at a later date.

IT IS SO ORDERED this 26th day of December, 2024.

_____
CHARLES B. GOODWIN
United States District Judge